**JAMES R. FROCCARO, JR.**
**Attorney at Law**
**20 Vanderventer Avenue, Suite 103W**
**Port Washington, NY 11050**
**telephone: (516) 944-5062**
**fax: (516) 944-5066**
**email: JRFESQ61@aol.com**

April 29, 2022

<u>BY ECF</u>
Hon. Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 10017

Re:  <u>United States v. Anthony Russo</u>
92 Cr 351 (FB)

Dear Judge Block:

I am the attorney for defendant Anthony Russo ("Mr. Russo"). This letter is written in support of Mr. Russo's motion for a sentence reduction pursuant to 18 USC 3582(c)(1)(A).  The basis for this application is set forth below.

<u>The Procedural History</u>

On the night of March 25, 1992 two men – John Minerva and Joseph Imbergamo - were shot dead in a parked car as part of an ongoing effort by the Persico Faction to win the Colombo war.  Anthony Russo, his cousin Joseph Russo, and Joseph Monteleone were convicted in April 1994 of that murder conspiracy and the substantive crime, among other charges.  At the trial, the government did not claim that Anthony Russo

1

participated directly in the murder, but contended only that Anthony Russo had aided and abetted the crime.

The government's trial evidence established that Anthony Russo participated in a broad murder conspiracy during the Colombo War. However, the evidence that Anthony Russo aided and abetted the murder of Minerva/Imbergamo on March 25, 1992, rested, even then, on the slimmest of proof. This proof consisted of Anthony Russo's participation in war conspiracy meetings beforehand, at which no specific plans to kill Minerva were discussed, and his purported statement at Wolfe's Deli after-the-fact - according to a single cooperating witness, Larry Mazza - that "they had been working on getting [Minerva and] finally got to him in front of his café." (Trial tr. at 3783)

In extensive post-trial litigation spanning 1994 until sentence was imposed in 1999, the case against Anthony Russo for the Minerva/Imbergamo homicide was diminished by a succession of revelations. The first involved the government's non-disclosure at trial that Gregory Scarpa Sr., an unindicted co-conspirator who had committed most of the violence by the Persico faction and goaded his fellow members to join him, was, in fact, a long-time FBI informant who had been acting with the corrupt protection and assistance of his FBI handler, Supervisory Special Agent Lindley DeVecchio. Scarpa personally committed all but one of the five murders alleged as part of the murder conspiracy charge, and he was also the sole source of cooperating witness testimony that the "crew downtown"(which the government claimed referred to both Joseph Russo and Anthony Russo) had accomplished the Minerva murder.

After years of post-trial litigation during which the district court set aside the conviction which was then reinstated on appeal, Anthony Russo was sentenced to a term of life imprisonment plus 5 years.[1] At the time of Mr. Russo's sentencing in 1999, Judge Sifton had no choice but to sentence him to a term of life imprisonment due to the then-mandatory nature of the U.S. Sentencing Guidelines.

The question of Russo's involvement in the Minerva/Imbergamo murders continued to be litigated after the sentencing, as new evidence cast further doubt on the government's case.  A supplemental Rule 33 motion – filed before but decided after Russo's sentencing – presented evidence that the government's principal cooperators, Larry Mazza and Carmine Sessa, had perjured themselves at Russo's trial.  In 2003, Russo and his codefendants moved for habeas relief on the grounds that the government had suppressed exculpatory information regarding the identity of the shooters in the Minerva/Imbergamo murders.[2]  In 2013, Russo sought permission to file a second, successive habeas petition based upon new evidence that came to light that Russo had been purposely excluded from the plot to kill Minerva.  None of Mr. Russo's post-sentencing applications were successful.

Mr. Russo was 40 years old at the time of his arrest in this case. Next February he will be 70 years old.  The more than 29 years he has already served in prison is the functional equivalent - with good time - of a 35 year prison term or sentence.   Mr. Russo now seeks a sentence reduction pursuant to 18 U.S.C. 3582(c)(1)(A).  Under this section, once a defendant has exhausted his administrative remedies, a district court may reduce a defendant's sentence to time-served so long as that reduction is warranted by extraordinary and compelling reasons, and is

---

[1]  In addition to life imprisonment, Mr. Russo was sentenced to a 5 year consecutive term for a firearm count.  A copy of the Judgment in a Criminal Case is attached hereto as Exhibit A.

[2]  Neither of these alleged shooters were purported to be members of the same "crew" as Mr. Russo.

3

appropriate in light of the Section 3553(a) factors.[3]

The Bases for the Instant Motion

In United States v. Brooker, 976 F.3d 228, 237-238 (2020), the Second Circuit held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." And, that "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation... alone shall not be considered an extraordinary and compelling reason.'" Id. Indeed, the determination as to what "constitutes extraordinary and compelling reasons warranting a reduction is committed to the sound discretion of the district court." See United States v. Roney, 833 Fed.App'x 850, 852 (2d Cir. 2020) (summary order). For the extraordinary and compelling reasons to follow below, I am respectfully requesting that Mr. Russo's motion for a sentence reduction to time-served be granted.

A. Mr. Russo's Extraordinary Rehabilitation

Mr. Russo has made extraordinary efforts toward rehabilitation. Indeed, for the last 21 years he has not received a single disciplinary infraction and he has been by all accounts, a model prisoner. He also has an outstanding work performance record - and has also successfully completed over 40 educational courses in addition to obtaining his GED while imprisoned. Attached hereto as Exhibit C is a copy of Mr. Russo's Summary Reentry Plan/Progress Report confirming all of this information. I have also attached hereto for Your Honor's review, letters from staff at

---

[3] The Courts have routinely held that the exhaustion requirement is waivable in compassionate release cases related to the COVID-19 pandemic. Here, Mr. Russo's administrative request for compassionate release based upon the COVID-19 pandemic was denied by the Warden at USP Allenwood. A copy of Mr. Russo's request and the Warden's denial are attached hereto collectively as Exhibit B.

the Federal Correctional Complex at Allenwood extolling Mr. Russo's rehabilitative efforts.  As Senior Officer Cody Leon wrote in his BOP Memorandum to Your Honor:

> ...I have worked in Anthony Russo's housing unit sporadically while being employed as a Correctional Officer at USP Allenwood. During this time I have had many personal and professional interactions allowing me to understand Mr. Russo's priorities, commitments, character and his sense of community.
>
> What I have come to know is that Mr. Russo is a model inmate. Not only has he not had a write up in over 19 years but he also maintains a job within the institution which allows him to help others.  Mr. Russo has consistently shown a desire to not only better himself and the people around him but to improve his environment and community to the best of his abilities.  He works directly with the recreation department to set programs and events that help bring his fellow inmates together while being incarcerated during the stressful operations under COVID-19....
>
> I believe the level of respect Mr. Russo receives from both inmates and staff members speaks volumes about his character. He is considerate, respectful, trustworthy, and hard-working. He is a role model inmate who exhibits behavior that follows Bureau of Prisons policies and regulations.  It is my belief that given a second chance, Mr. Russo possesses the desire, ability, and support system needed for him to succeed. I highly recommend you giving this man a second chance.

See Memorandum of BOP Senior Officer Cody Leon attached hereto as Exhibit D (emphasis supplied).

Likewise, USP Allenwood Recreation Specialist Ryan Schuck wrote in his Memorandum to Your Honor that:

> ...What I can tell you is that Mr. Russo has been one of the best workers and best men that have been employed by our department.  He has a tremendous work ethic and he is consistent and trustworthy.  He is always going above and beyond what is asked of him and is always willing to perform extra duties to benefit the recreation department.
>
> The characteristic that sticks out most is his high character and a great attitude.  He is always respectful, polite and hard-working.  He is constantly pursuing ways to help him become the best person he can be.  His model behavior is in compliance with our rules, regulations, and policies. He has participated in and organized several recreation programs and spends a majority of his free time exercising in the recreation department.  He is well-liked and well-respected by the institution staff and inmates alike.
>
> More importantly, after supervising and sharing conversations with Mr. Russo for the past several years I can honestly tell you this man places his family at the highest priority in his life. He is a great husband, father, and grandfather.  Despite being incarcerated he has remained a rock and source of strength for his family.  He loves his family very much and they love him dearly.  <u>It is with my highest recommendation that you would strongly consider giving this man a second chance.  He is a model inmate and one of the best workers on my detail, he has a strong family and good support system, and he deserves the opportunity to be free</u>.

<u>See</u> Memorandum of BOP Recreational Specialist Ryan Schuck attached hereto as Exhibit E (emphasis supplied).

6

Finally, the First Step Act required the Attorney General to develop a risk assessment system to be used by the BOP to assess the recidivism risk of all federal prisoners.  Attached hereto for Your Honor's review as Exhibit F is a copy of the BOP's FSA Recidivism Risk Assessment for Mr. Russo.  Significantly, the BOP has assessed Mr. Russo's risk of recidivism if released as "MIN" or minimal.

B.    The COVID-19 Pandemic Related Issues

It is now common knowledge that older adults - age 65 and over - are at the highest risk of getting very sick, or worse, from COVID-19. Indeed, more than 81% of the near 1 million COVID-19 related deaths nationwide have occurred in people over the age of 65.  Mr. Russo, near 70 years old, is no doubt in the high risk category simply by virtue of his age.  Aside from his age, however, Mr. Russo also suffers from two additional high risk factors, namely, atherisclerosis and high blood pressure, and he is also borderline diabetic (another high risk factor). See relevant BOP medical records attached hereto as Exhibit G.  As Your Honor is no doubt well aware, these conditions serve to increase Mr. Russo's risk of severe consequences even further if infected with the highly contagious virus.

Aside from posing a continued threat to Mr. Russo's health - the ongoing pandemic has also made Mr. Russo's incarceration far harsher and more punitive than would have otherwise been the case.  Because the virus spread like wildfire within the Allenwood complex where Mr. Russo was then housed, the facility imposed very onerous - near 24/7 lock-downs and restrictions that have made Mr. Russo's incarceration far harsher than normal.  As recounted by the numerous letters from family members, Mr. Russo was prohibited from having visitors for well over a year - beginning in March of 2020.  Even now, family visits - when actually permitted - are subject to severe restrictions.  Mr. Russo is required to remain behind a glass partition during any encounter with his loved ones and no physical contact is permitted.

These restrictions have been particularly devastating to the entire Russo family.  Prior to the pandemic, Mr. Russo's sons each brought their own children to visit with their grandfather on a regular basis.  During their visits, they were permitted to have physical contact with the children, hugging them, kissing them and sitting on his lap.  Since the onset of the pandemic - the youngest children have not seen Mr. Russo because young children have not been permitted to enter the facility.[4]

The risk of suffering severe health consequences if he contracts COVID-19, coupled with the severe conditions imposed by the accompanying lock-downs and restrictions that continue to be necessary to ensure prisoner and staff safety during the ongoing pandemic, have clearly made the severity of Mr. Russo's sentence exceed what any court could have anticipated at the time of his initial sentencing.  See Information for the Inmate population from Warden dated January 18, 2022, attached hereto as Exhibit H ("As a result of multiple COVID tests, units 2 and 4 have been secured to mitigate the possible spread of the virus to staff and other inmates within the unit..."); see also, Pennsylvania News Article dated December 27, 2021, entitled "Allenwood Penitentiary has more inmate COVID-19 cases than any other BOP facility" attached hereto as Exhibit I ("The federal penitentiary at the Allenwood Correctional Complex has 143 inmates who have tested positive for COVID-19, more than any other facility operated by the U.S. Bureau of Prisons....There have been two COVID-19 related deaths at the three-prison Allenwood complex...").  These circumstances, together, clearly serve to support Mr. Russo's request for a sentence reduction here.

---

[4]  Mr. Russo has six (6) grandchildren - ages 7, 9, 12, 12, 17 and 18 years old.

## The Relevant Case Law

In <u>United States v. Rodriguez,</u> 492 F.Supp 3d. 306 (S.D.N.Y. 2020), defendant Diego Rodriguez was originally sentenced to life imprisonment under the then-mandatory Sentencing Guidelines for personally participating in the brutal torture and murder of a confidential informant.  At the time of the pro-se motion he filed with the court pursuant to 18 USC 3582(c)(1)(A), Rodriguez was 54 years old and had served 20 years of his life sentence.  Judge Rakoff granted the motion and reduced Rodriguez's sentence to 30 years in prison finding that his rehabilitation - together with the unique hardship and risk of severe illness imposed by the pandemic - constituted extraordinary and compelling circumstances under 3582(c)(1)(A).  As Judge Rakoff explained in his opinion:

> ...the pandemic, aside from posing a threat to Rodriguez's health, has made Rodriguez's incarceration harsher and more punitive than would otherwise have been the case.  This is because the federal prisons, as prime candidates for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal.  For someone with Rodriguez's health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure Rodriguez's safety, means that the actual severity of [Rodruguez's] sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.

<u>Id</u>. at 311.

Similarly, in <u>United States v. Gluzman</u>, No. 96 Cr 323, 2020 WL 4233049 (S.D.N.Y. July 23, 2020), defendant Rita Gluzman was originally sentenced to life imprisonment under then-mandatory Sentencing Guidelines for participating in the brutal murder and dismemberment of her husband.  Gluzman was granted a sentence reduction to time-served after 24 years in prison - under the "compassionate release" statute.  As Judge Liman explained in his written decision:

> First, given her age (71) and underlying medical conditions, [Gluzman] argues that she is at especially high risk of suffering serious if not fatal, medical complications should she contract COVID-19.  Second, 'in light of Ms. Gluzman's exemplary conduct while incarcerated and good moral character' she argues that she is 'deserving of mercy.'  While neither basis is independently dispositive of the Court's determination, the Court considers both, in conjunction with the factors laid out above, to be powerful arguments for a sentence reduction.

<u>Id</u>. at *16.

Likewise, in <u>United States v Nickens</u>, 11 Cr 317, 2021 WL 4487824 (N.D.N.Y. Sept. 14, 2021) defendant Habakkuk Nickens was convicted of driving the vehicle from which a co-defendant shot and killed a fellow gang member and was sentenced to 240 months in prison for the crime in 2014.  The defendant while incarcerated at MDC Brooklyn moved for compassionate release arguing that he had asthma and that prison conditions there exposed him to greater risk of contracting COVID-19, and also, that extensive evidence of rehabilitation merited his immediate release.  The court granted in part his request - reducing his sentence to 160 months in prison for participating in the murder.  As the court explained:

> Overall, Defendant's health concerns are understandable, as COVID-19 could have a severe impact on a chronic asthma sufferer.  However, given the current low number of cases at

10

MDC Brooklyn and the ongoing vaccination effort, the risk
to Defendant does not on its own rise to the level of an
extraordinary and compelling reason for compassionate release.

Id. at *2.  The court went on to find, however, that the defendant's
rehabilitation and far-reaching impact on the lives of other inmates
supported a finding of extraordinary and compelling reasons for a
sentence reduction.  Id. at *5.

The defendant in United States v. Underwood, No. 88 Cr 822, 2021
WL 3204834 (S.D.N.Y. Jan. 15, 2021), William Underwood, was the leader
of a heroin distribution enterprise responsible for at least five brutal and
calculated murders and one attempted murder aimed at eliminating and
intimidating competitors, informants and actual or potential witnesses.
He was granted immediate release from a life sentence after having
spent 33 years in prison.  As the court explained in granting Underwood's
immediate release:

Underwood, currently 67 years old and in the thirty-third
year of his sentence, has now spent half his life in federal prison.
The difference between these two halves could not be more
pronounced. As discussed below, Underwood has by all accounts
been a manifestly model inmate, a mentor to countless young
men in custody, and an active and devoted father and grandfather,
all while under the specter of a life-without-parole sentence.

Id. at *2.

Finally, in United States v. Lewis, 00 Cr 1118, 2021 WL 3292180
(S.D.N.Y. Aug. 2, 2021), defendant Martin Lewis carried out the contract
murder of an organized crime member - stalking and then executing the
victim with a firearm - shooting him in the cheek, neck, arm and torso -
in exchange for $10,000.  He was convicted of murder in aid of
racketeering and sentenced to life in prison.  Reducing Lewis' sentence
from life imprisonment to 30 years, the court noted his age - 66 years old

11

- and his asthma - as well as his 20 year prison record reflecting no disciplinary infractions and extensive course-work completion as extraordinary and compelling reasons for the reduction.  Id. at *2.  The court also relied upon in reducing Lewis' sentence that Lewis "ha[d] strengthened his family ties [while imprisoned], speaking to his youngest daughter Natalia almost daily."  Id. at *3.

The 3553(a) Considerations

At the time of Mr. Russo's sentencing, the Guidelines were mandatory.  Judge Sifton had no choice but to impose a life sentence upon Mr. Russo.  Since 2006, the Guidelines were deemed advisory and but one factor for the Court to consider in fashioning a sentence that is sufficient, but not greater than necessary under 18 USC 3553(a).  In 2021, the average sentence for a defendant convicted in federal court of murder was 244 months or a fraction over 20 years.  See 2021 USSG Sourcebook, Table 15, attached hereto as Exhibit J.  Mr. Russo, on the other hand, who will be 70 years old in February, has already been imprisoned for near 348 months - the equivalent of an almost 35 year or 420 month prison term.  This disparity is clearly a factor which weighs in favor of a reduced sentence of time-served here.[5]

Mr. Russo also enjoys the support of an extraordinarily loving and devoted family.  By all accounts, he has remained a central figure in the lives of his wife, children, and grandchildren despite his draconian sentence.  I have attached hereto for Your Honor's review collectively as Exhibit K, letters from various members of Mr. Russo's family, along with family photos - some from prison and others from the myriad

---

[5]  In United States v. Ramsay, 538 F.Supp.3d 407 (S.D.N.Y. 2021), the Court found that the mandatory nature of the life sentence imposed upon defendant Andrew Ramsay under the then-mandatory United States Sentencing Guidelines in 1998, for murdering a man, a woman and her child - was among a number of "extraordinary and compelling" reasons for the reduction in his sentence to a 30 year prison term.  Clearly, Your Honor could apply that same logic in Mr. Russo's particular case.

milestones Mr. Russo has missed.  I know that Your Honor will read these letters but a few of the passages or pleas for mercy are clearly worth noting here.  As Mr. Russo's wife of 47 years, Concetta, explained in her letter to this Court:

> My name is Concetta Russo and I am writing to you on behalf of my husband Anthony Russo.  Anthony has been incarcerated since April 8, 1993.  I have known Anthony since grade school.  We have been married for nearly 47 years - though the last 30 have been very painful ones for me, to say the least.

> I am praying that you will find it in your heart to consider my husband's request for a sentence reduction.  He's been imprisoned and away from us all for the past near 30 years. He's missed so many important occasions and milestones in our children's lives and all of the important occasions and milestones in his six (6) grandchildren's lives.  He has always tried to be a positive influence and presence in our lives while he's been away from us - though the last few years have been particularly difficult because of the ongoing pandemic.  Unfortunately, we've been prohibited from visiting with him for extremely long stretches of time - well over a year at one point - and this has been especially difficult for him - not seeing us - and being virtually locked down in his cell.

> I know that my husband has been a model inmate and that he has tried to improve himself while away from us.  He is now near 70 years old and not in good health.  God forbid he is ever infected with COVID-19.  I worry for my husband everyday. He has paid a very substantial debt to society and deserves to finally be reunited and home with his family.  Hopefully, as soon as is possible.

> If Your Honor orders my husband's release - he will be living with me in the same home we had 30 years ago.  Fortunately, we

inherited another home which we rent that generates enough income for us to live comfortably in the twilight years of our lives.

Please allow my husband to come home to us!

See Exhibit K.

As one of Mr. Russo's grandaughters, Gianna, wrote in her letter to Your Honor:

My name is Gianna Russo, I am Anthony Russo's granddaughter.

I think of my Pop as a loving, caring figure. Some memories I have with my grandfather include receiving drawings from him, as a kid, I would be so excited waiting for the next one he would send.  Each phone call that my grandfather makes home he makes me feel so special.  When we were able to visit with my grandfather before the pandemic, I was always thrilled to hug him and talk to him about what is going on in my life, however, going to visit him in a prison environment always makes me very sad and upset.

My relationship with my grandfather is very strong, but only consists of sitting at a table where I am timed to talk to him or phone calls once a week.  My biggest wish in life is to be with him outside of a prison setting.  I recently graduated high school and started college.  I wish my grandfather was home with me to be by my side during these major milestones in my life.  I hope that he will be home with us to one day watch me get married.

My grandfather has served enough time in prison - close to half of his 70 years.  We all miss him so dearly.

Please return him home to us Your Honor!

Id.

        Mr. Russo's age and extraordinary rehabilitation also serve as strong indicators that he will not be a recidivist.  The BOP's First Step Act Recidivism Risk Assessment supports this assertion.  He has been a model inmate, and has not had a single disciplinary infraction in the past 20 years.  Moreover, his work performance has been nothing short of stellar - earning rave reviews from the staff at Allenwood.  He has also improved himself by obtaining his GED and successfully numerous educational programs offered by the BOP.  He has already spent more than 29 years in prison - far more than the defendants have or ever will in Rodriguez, Gluzman, Nickens, Lewis, and Ramsay,

        For all of these reasons, I am most respectfully asking Your Honor to mix justice with some mercy in this case.  Mr. Russo has served enough time in prison and is deserving of the chance to return home to his loved ones.


                    Respectfully submitted,

                        /JRF/

                    James R. Froccaro, Jr.


JRF:pa
Encls.

15

Exhibit A

AO 245 S (Rev. 4/90)(N.D.Ala. rev.) Sheet 1 - Judgment in a Criminal Case

000004

FILED
IN CLERK'S OFFICE
U. S. DISTRICT COURT E.D. N.Y.

# UNITED STATES DISTRICT COURT ★
## Eastern District of New York

★ MAR 22 1999 ★

P.M. _____
TIME A.M. _____

UNITED STATES OF AMERICA

v.

ANTHONY RUSSO, also known as "Chuckie",

Defendant.

Case Number CR-92-00351-05(S-9)

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, ANTHONY RUSSO, also known as "Chuckie", was represented by Melvyn K. Roth, Esq. and Alan S. Futerfas, Esq.

The defendant was found not guilty of count (10) during trial and is discharged as to such count. The defendant was found guilty on count(s) 1,2,5,6,9,11 and 12 after a plea of not guilty. Accordingly, the defendant is adjudged guilty of such count(s), involving the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 18:1962(c) | RICO | 1 |
| 18:1962(d) | RICO conspiracy | 2 |
| 18:1959(a)(1) | Murder in furtherance of racketeering activity | 5 |
| 18:1959(a)(1) | Murder in furtherance of racketeering activity | 6 |
| 18:1959(a)(5) | Conspiracy to murder in furtherance of rackeering activity | 9 |
| 18:894 | Conspiracy to collect extortionate extensions of credit | 11 |
| 18:924(c)(1) | Use of a firearm during a crime of violence | 12 |

As pronounced on March 12, 1999, the defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $350.00, for count(s) 1,2,5,6,9,11 and 12, which shall be due immediately.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Signed this the 12th day of March, 19 99

Charles P. Sifton, U.S.D.J.

Defendant's SSAN: 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
Defendant's Date of Birth: February 24, 1953
Defendant's Address: 97 Third St., Brooklyn, N.Y. 11231

A True Copy Attest:
ROBERT C. HEINEMANN, Clerk of the Court

By: _____, Deputy Clerk     3/22/99 (Date)

AO 245 S (Rev. 4/90)(N.D.Ala. rev.) Sheet 2 - Imprisonment

000005

Judgment--Page 2 of 4

Defendant:  ANTHONY RUSSO, also known as "Chuckie"
Case Number:  CR 92-00351-05(S-9)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of life imprisonment on each of counts 1,2,5 and 6.  On count 9, the defendant is sentenced to a ten year term of imprisonment.  On count 11, the defendant is sentenced to a twenty year term of imprisonment.  On count 12, the defendant is sentenced to a five year term of imprisonment.  The sentences on counts 1,2,5,6,9 and 11 are to run concurrently.   The sentence on count 12 is to run consecutively to the sentences imposed on all other counts.

The Court makes the following recommendations to the Bureau of Prisons: **That, in order to facilitate family visits, the defendant be incarcerated at a facility in the Northeast region.**

## RETURN

The defendant is remanded to the custody of the United States Marshal.

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment.

Daniel C. Byrne, U.S. Marshal, E.D.N.Y.

By: _____

Deputy Marshal

AO 245 S (Rev. 4/90)(N.D.Ala. rev.) Sheet 3 - Supervised Release                                    000006

Defendant:  ANTHONY RUSSO, also known as "Chuckie"                         Judgment--Page 3 of 4
Case Number:  CR 92-00351-05(S-9)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 years on each of counts 1,2,5,6,9,11 and 12.  The terms are to run concurrently.

While on supervised release, the defendant shall not commit another federal, state, or local crime; shall not illegally possess a controlled substance; shall comply with the standard conditions that have been adopted by this court (set forth below); and shall comply with the following additional conditions:

1.     If ordered to the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

2.     If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remain unpaid at the commencement of the term of supervised release.

3.     The defendant shall not own or possess a firearm or destructive device.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1)   The defendant shall not leave the judicial district without the permission of the court or probation officer.
2)   The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
3)   The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4)   The defendant shall support his or her dependents and meet other family responsibilities.
5)   The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6)   The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.
7)   The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.
8)   The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
9)   The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10)  The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11)  The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
12)  The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.
13)  As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Exhibit B

April 5, 2021

To: H. Qyay, Warden FCC Allenwood Complex
From:   Anthony Russo/Register No. 42252-053

      I am currently an inmate as USP Allenwood.  I am hereby respectfully requesting that I be considered for compassionate release from my life sentence pursuant to 18 USC 3582(c)(1)(A). I believe that my situation presents extraordinary and compelling reasons for a reduction of my sentence and my immediate release.

      The crime that I was convicted of - a RICO murder - carried with it a mandatory life sentence - even though I was not alleged to have personally participated or directed any others involved to participate.  I am extremely remorseful for my involvement.  Notably, statistics released by the U.S. Sentencing Commission for the year 2020, reflect that the national average for this crime was 188 months.  See https://ida.ussc.gov/analytics/saw.dll?Dashboard.  This month, I will have served near twice the national average for that crime - 348 months or 29 years in prison.

      I have, at all times, been a model prisoner over the course of the past 29 years - with no disciplinary infractions.  I have also successfully completed countless programs offered by the Bureau of Prisons to improve and rehabilitate myself.  I am near 70 years old.  I have missed so many milestones in my life and the lives of my wife and children - who have stuck by me all of these years.  My only desire is to be re-united with my family and be able to freely interact with my grandchildren outside of a prison setting.  I would never be a recidivist if released.

      My health is also a factor to consider, especially during the COVID-19 pandemic. I possess a number of high risk factors for dire consequences if infected with this deadly virus. I am over the age of 65 and suffer from heart disease and high blood pressure, and I am now told that I am borderline diabetic.  I also suffer from spinal stenosis which I'm told will require dangerous surgery to repair.

      Thank you for your time and consideration

                Sincerely,


                Anthony Russo
                Register No. 42252-053

RUSSO, Anthony
Register No.: 42252-053
Unit 3B
Page 1

---

### Inmate Request to Staff Response

This is in response to your Request to Staff, wherein you request a
Compassionate Release/Reduction in Sentence (RIS) based upon
"extraordinary and compelling circumstances." Specifically, you claim
you are serving a much greater sentence than others sentenced for similar
crimes, you have since been rehabilitated during your incarceration, and
your health conditions warrant consideration based on the COVID-19 pandemic
and your age.

While I appreciate and understand the issue at hand in regards to your
sentencing, your request does not meet the requirements as set forth in
policy. In accordance with Program Statement 5050.50, Compassionate
Release/Reduction in Sentence, you do not meet the requisite criteria under
extraordinary or compelling circumstances. The Bureau of Prisons does not
have the authority, through its compassionate release/reduction in
sentence procedures, to reduce an inmate's term of imprisonment as a result
of your perception of being sentenced more severely than others who have
committed similar crimes.

In regards to your request for compassionate release based on your medical
conditions, your request does not meet the criteria set forth in Program
Statement 5050.50, Compassionate Release/Reduction in Sentence. A
medical review determined you have not been diagnosed with a terminal,
incurable disease with a life expectancy of eighteen months or less, you
are able to care for your daily needs, and you are not confined to a bed
or wheelchair for greater than fifty percent of your waking hours.

In accordance with Program Statement 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.
3582 and 4205(g), Elderly Inmates with Medical Conditions must be Age 65
and older. You are only 68 years old, but have not served at least 50%
of your sentence. As such, you are not eligible for early release under
the PS 5050.50.

The BOP is taking extraordinary measures to contain the spread of COVID-19
and treat any affected inmates. We recognize that you, like all of us,
have legitimate concerns and fears about the spread and effects of the
virus. However, your concern about being potentially exposed to, or
contracting, COVID-19 does not currently warrant an early release from your
sentence.

Accordingly, your request for Compassionate Release/Reduction in Sentence
has been denied. If you are dissatisfied with this response, you may appeal
this decision through the Administrative Remedy Process.

4-16-21
_____
Date

_____
H. Quay
Warden

Exhibit C



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: RUSSO, ANTHONY  42252-053

SEQUENCE: 00300530
Report Date: 04-18-2022



| | | | |
|---|---|---|---|
| Facility: | ALM ALLENWOOD MED FCI | Custody Level: | IN |
| Name: | RUSSO, ANTHONY | Security Level: | MEDIUM |
| Register No.: | 42252-053 | Proj. Rel Date: | UNKNOWN |
| Quarters: | D04-222L | Release Method: | LIFE |
| Age: | 69 | | |
| Date of Birth: | 02-24-1953 | DNA Status: | ALP01033 / 06-07-2011 |

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| COUNT 1: RICO; 18:1962(C) / COUNT 2: RICO CONSP; 18:1962(D) COUNT 5&6: MURDER IN FURTHEREANCE OF RACKET ACT; 18:1959(A)(1) COUNT 9: CONSP/MURDER IN FURTHE OF RACKET ACT; 18:1959(A)(5) COUNT 11: CONSP TO COLLECT EXTORTIONATE EXTENSIONS OF CREDIT; 18:894 | LIFE |
| COUNT 12: USE OF FIREARM DURING A CRIME OF VILENCE; 18:924(C) | 5 YEARS |

Date Sentence Computation Began:     03-12-1999
Sentencing District:   NEW YORK, EASTERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 /    0 /   0 | 0 | Years: 29 Months: 0 Days: | + 2164    JC - 0    InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Program Plans

| |
|---|
| ** No notes entered ** |

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 11-15-2019 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE – AUTO | 12-17-2019 |
| N-ANGER Y | NEED - ANGER/HOSTILITY YES | 01-15-2022 |
| N-ANTISO R | NEED - ANTISOCIAL PEERS REFUSE | 01-15-2022 |
| N-COGNTV R | NEED - COGNITIONS REFUSE | 01-15-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC N | NEED - EDUCATION NO | 01-15-2022 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 01-15-2022 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 01-15-2022 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 01-15-2022 |
| N-MEDICL Y | NEED - MEDICAL YES | 01-15-2022 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 01-15-2022 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 01-15-2022 |
| N-TRAUMA R | NEED - TRAUMA REFUSE | 01-15-2022 |
| N-WORK Y | NEED - WORK YES | 01-15-2022 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 11-16-2021 |

### FSA Comments

| |
|---|
| ** No notes entered ** |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ALM | COR SVC PM | CORRECTIONAL SERVICES | 10-27-2021 |

### Work Assignment Summary

| |
|---|
| ** No notes entered ** |



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: RUSSO, ANTHONY  42252-053

SEQUENCE: 00300530
Report Date: 04-18-2022

### Current Education Information

| Facl | Assignment | Description | Start |
|------|------------|-------------|-------|
| ALM | ESL HAS | ENGLISH PROFICIENT | 04-22-1999 |
| ALM | GED HAS | COMPLETED GED OR HS DIPLOMA | 03-25-1999 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| ALP | C | NUTRITION, DIGESTIVE AND RESP | 08-25-2021 | 09-02-2021 |
| ALP | C | THE CARDIOVSCULAR AND THE LYMP | 07-23-2021 | 07-29-2021 |
| ALP | C | ENDOCRINE SYSTEM AND THE | 06-19-2021 | 07-02-2021 |
| ALP | C | NERVOUS SYSTEM | 05-15-2021 | 06-03-2021 |
| ALP | C | ARTICULAR & MUSCULAR SYSTEM | 04-04-2021 | 05-05-2021 |
| ALP | C | THE CARDIOVSCULAR AND THE LYMP | 03-06-2021 | 03-27-2021 |
| ALP | C | RHU FDIC $ SMART 11:FIN RECOVR | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 10:OWN HOME | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 9:LOAN | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 8:CHARGE IT | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 7:CREDIT | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 6:KEEP SAFE | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 5:PAY YOURSLF | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 4:$ MATTERS | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 3:CHECKING | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 2:BORROWING | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FDIC $ SMART 1:BANK ON IT | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU FAMOUS MALE SPORTS STARS | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU ANIMAL ANATOMY 6:SKELETON | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU ANIMAL ANATOMY 5:SKIN | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU ANIMAL ANATOMY 4:ORGANS | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU ANIMAL ANATOMY 3:THE CELL | 03-11-2021 | 03-19-2021 |
| ALP | C | RHU ENHANCING YOUR | 02-22-2021 | 03-03-2021 |
| ALP | C | RHU ACE US CONSTITUTION | 02-22-2021 | 03-03-2021 |
| ALP | C | RHU EARLY CIVILIZATIONS | 01-25-2021 | 03-03-2021 |
| ALP | C | RHU HISPANIC AMERICANS | 02-16-2021 | 03-03-2021 |
| ALP | C | RHU EARLY NORTH AMERICA | 02-16-2021 | 03-03-2021 |
| ALP | C | RHU WORLD WAR 1 | 02-23-2021 | 03-03-2021 |
| ALP | C | RHU EXPLORING EUROPE | 02-23-2021 | 03-03-2021 |
| ALP | C | RHU AMERICAN-INDIAN WARS | 02-23-2021 | 03-03-2021 |
| ALP | C | RHU AFRICAN AMERICAN HISTORY | 02-23-2021 | 03-03-2021 |
| ALP | C | RHU ANIMAL ANATOMY 9:HEART | 02-23-2021 | 03-03-2021 |
| ALP | C | RHU ANIMAL ANATOMY 10:CIRCULAT | 02-23-2021 | 03-03-2021 |
| ALP | C | RHU ACE MIND STRENGTH | 09-30-2020 | 10-30-2020 |
| ALP | C | RHU ACE HISTORY MANIFEST DEST | 09-17-2020 | 10-30-2020 |
| ALP | C | RHU ACE INTRO TO OSHA | 09-09-2020 | 10-30-2020 |
| ALP | C | ACE WORLD WAR 2 HISTORY IN RHU | 05-21-2020 | 10-30-2020 |
| ALP | C | RHU OUR SOLAR SYSTEM | 05-14-2020 | 10-30-2020 |
| ALP | C | RHU MANY FACES OF AMERICAN REV | 05-07-2020 | 10-30-2020 |
| ALP | C | SKELETAL SYSTEM | 10-10-2020 | 10-31-2020 |
| ALP | C | RHU ANIMAL ANATOMY 2:CLASSIFY | 08-11-2020 | 08-31-2020 |
| ALP | C | RHU ANIMAL ANATOMY 1:CHEMICAL | 07-27-2020 | 08-31-2020 |

### Education Information Summary

| ** No notes entered ** |
|---|

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 04-30-2002 | 397 : PHONE ABUSE - NO CIRCUMVENTION |



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: RUSSO, ANTHONY  42252-053

SEQUENCE:  00300530
Report Date: 04-18-2022

| Hearing Date | Prohibited Acts |
|---|---|
| 05-27-1997 | 305 : POSSESSING UNAUTHORIZED ITEM |
| 10-10-1995 | 398 : INTERFERING W/STAFF-MODERATE |
| 09-19-1995 | 305 : POSSESSING UNAUTHORIZED ITEM |
| 08-18-1993 | 399 : DISRUPTIVE CONDUCT-MODERATE |

### Discipline Summary

| ** No notes entered ** |
|---|

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|---|---|---|---|---|
| ALM | A-DES | TRANSFER RECEIVED | 10-25-2021 | CURRENT |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 06-10-2021 | 10-25-2021 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 03-19-2021 | 06-10-2021 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 01-16-2009 | 03-19-2021 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 03-31-2003 | 01-16-2009 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 03-24-2003 | 03-31-2003 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 01-17-2003 | 03-24-2003 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 11-15-2002 | 01-17-2003 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 08-09-2002 | 11-15-2002 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 05-16-2002 | 08-09-2002 |
| ALP | A-DES | OTHER AUTH ABSENCE RETURN | 07-02-2001 | 05-16-2002 |
| ALP | A-DES | US DISTRICT COURT COMMITMENT | 04-14-1999 | 07-02-2001 |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 09-24-2010 |
| CARE2 | STABLE, CHRONIC CARE | 01-08-2009 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| C19-QUAR | COVID-19 QUARANTINED | 10-05-2021 |
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 12-03-2020 |
| LOWER BUNK | LOWER BUNK REQUIRED | 05-22-2018 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 11-07-2018 |
| REG DUTY | NO MEDICAL RESTR–REGULAR DUTY | 05-28-1993 |

### Current PTP Assignments

| Assignment | Description | Start |
|---|---|---|

*NO ASSIGNMENTS*

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DRG I NONE | NO DRUG INTERVIEW REQUIRED | 04-30-1999 |

### Physical and Mental Health Summary

| ** No notes entered ** |
|---|

### FRP Payment Plan

| Most Recent Payment Plan |
|---|

| FRP Assignment: | COMPLT | FINANC RESP-COMPLETED | | Start: 07-06-2000 |
|---|---|---|---|---|
| Inmate Decision: | AGREED | $300.00 | Frequency: MONTHLY | |
| Payments past 6 months: | $0.00 | | Obligation Balance: $0.00 | |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $350.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: RUSSO, ANTHONY 42252-053

SEQUENCE: 00300530
Report Date: 04-18-2022

Most Recent Payment Plan

**Financial Responsibility Summary**

** No notes entered **

**Release Planning**

** No notes entered **

**General Comments**

** No notes entered **



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: RUSSO, ANTHONY  42252-053

SEQUENCE: 00300530
Report Date: 04-18-2022

Name:  RUSSO, ANTHONY
Register Num:  **42252-053**
Age:  69
Date of Birth:  02-24-1953
DNA Status:  ALP01033 / 06-07-2011

Inmate    (RUSSO, ANTHONY, Register Num: 42252-053)

_4/18/22_

Date

Chairperson

_4/18/22_

Date

Case Manager

_4/18/22_

Date

Exhibit D



**U.S. Department of Justice**
**Memorandum**
Federal Bureau of Prisons

*Federal Correctional Complex, Allenwood*

*United States Penitentiary*
*P.O. Box 3500*
*White Deer, PA 17887*

July 24, 2021

**To:** Honorable Judge Block

**From:** Cody Leon, Senior Officer, USP Allenwood

**Subject:** Russo, Anthony Reg# 42252-053

This memorandum should be placed in Mr. Russo's Central File and utilized as a progress report for future considerations.

I have worked in Anthony Russo's housing unit sporadically for the last 4 years while being employed as a Correctional Officer at USP Allenwood. During this time I have had many personal and professional interactions allowing me to understand Mr. Russo's priorities, commitments, character and his sense of community.

What I have come to know is that Mr. Russo is a model inmate. Not only has he not had a write up in over 19 years but he also maintains a job within the institution which allows him to help others. Mr. Russo has consistently shown a desire to not only better himself and the people around him but to improve his environment and community to the best of his abilities. He works directly with the recreation department to set up programs and events that help bring his fellow inmates together while being incarcerated during the stressful operations under Covid-19.

Mr. Russo has demonstrated his commitment to his family on a daily basis. Although he remains incarcerated, he has always put being a father, grandfather, and a husband above all. Through the tough year with Covid-19 he has remained a steady source of strength and love for his family. The love and support he shows is reciprocated from all members of his family.

I believe the level of respect Mr. Russo's receives from both inmates and staff members speaks volumes about his character. He is considerate, respectful, trustworthy, and hard-working. He is a role model inmate who exuberates behavior that follows the Bureau of Prisons policies and regulations. It is my belief that given a second chance Mr. Russo possesses the desire, ability, and support system needed for him to succeed. I highly recommend that you consider giving this man a second chance.

Exhibit E



**U.S. Department of Justice**

**Memorandum**
Federal Bureau of Prisons

*Federal Correctional Complex, Allenwood*

*United States Penitentiary*
*P.O. Box 3500*
*White Deer, PA  17887*

June 27, 2021

**To:** Honorable Judge Block

**From:** Ryan Schuck, Recreation Specialist, USP Allenwood

**Subject:** Russo, Anthony Reg# 42252-053

This memorandum should be placed in Mr. Russo's Central File and utilized as a progress report for future considerations.

During the 6 years that I have been employed as a Recreation Specialist at USP Allenwood Anthony Russo has been assigned to my recreation work detail for 2 of those years. This has given me a first-hand look at his character, work ethic, commitment to his family, and the manner in which he manages his time and priorities.

What I can tell you is that Mr. Russo has been one of the best workers and best men that have been employed by our department. He has a tremendous work ethic and he is consistent and trustworthy. He is always going above and beyond what is asked of him and is always willing to perform extra duties to benefit the recreation department.

The characteristic that sticks out the most is his high character and a great attitude. He is always respectful, polite, and hard-working. He is constantly pursuing ways to help him become the best person he can be. His model behavior is in compliance with our rules, regulations, and policies. He has participated in and organized several recreation programs and spends a majority of his free time exercising in the recreation department. He is well-liked and well-respected by the institution staff and inmates alike.

Most importantly, after supervising and sharing conversations with Mr. Russo for the past several years I can honestly tell you that this man places his family at the highest priority in his life. He is a great husband, father, and grandfather. Despite being incarcerated he has remained a rock and source of strength for his family. He loves his family very much and they love him dearly. It is with my highest recommendation that you would strongly consider giving this man a second chance. He is a model inmate and one of the best workers on my detail, he has a strong family and good support system, and he deserves the opportunity to be free.

Exhibit F

### FSA Recidivism Risk Assessment (PATTERN 01.02.01)

Register Number:42252-053, Last Name:RUSSO

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 42252-053 | Risk Level Inmate....: R-MIN |
| Inmate Name |   General Level......: R-MIN (-16) |
|   Last........: RUSSO |   Violent Level......: R-MIN (-4) |
|   First........: ANTHONY | Security Level Inmate: HIGH |
|   Middle.......: | Security Level Facl..: MEDIUM |
|   Suffix.......: | Responsible Facility.: ALM |
| Gender.........: MALE | Start Incarceration..: 03/12/1999 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 68 | 0 | 0 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | TRUE | 5 | 5 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 0 | 0 | 0 |
| Education Score | HighSchoolDegreeOrGED | -4 | -2 |
| Drug Program Status | NoNeed | -9 | -3 |
| All Incident Reports (120 Months) | 0 | 0 | 0 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | 234 | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 35 | -8 | -4 |
| Work Programs | 0 | 0 | 0 |
| | Total | -16 | -4 |

Exhibit G



**Federal Bureau of Prisons**

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

*** Sensitive But Unclassified ***

| | | |
|---|---|---|
| **Name** RUSSO, ANTHONY | **Facility** USP Allenwood | **Collected** 03/15/2021 09:57 |
| **Reg #** 42252-053 | **Order Unit** A02-221L | **Received** 03/16/2021 11:18 |
| **DOB** 02/24/1953 | **Provider** Brian Buschman, MD | **Reported** 03/16/2021 15:23 |
| **Sex** M | | **LIS ID** 105201529 |

## CHEMISTRY

| | | | | |
|---|---|---|---|---|
| Sodium | | 144 | 137-148 | mmol/L |
| Potassium | | 4.6 | 3.5-5.0 | mmol/L |
| Chloride | | 105 | 99-114 | mmol/L |
| Carbon Dioxide | | 27 | 22-30 | mmol/L |
| Urea Nitrogen (BUN) | | 19 | 7-22 | mg/dL |
| Creatinine | | 1.13 | 0.66-1.25 | mg/dL |
| eGFR (IDMS) | | >60 | | |

GFR units measured as mL/min/1.73 m^2. If African American multiply by 1.210.
A calculated GFR <60 suggests chronic kidney disease if found over a 3 month period.

| | | | | |
|---|---|---|---|---|
| Calcium | | 9.8 | 8.5-10.9 | mg/dL |
| Glucose | | 90 | 70-110 | mg/dL |
| Anion Gap | | 12.2 | 9.0-19.0 | |
| Cholesterol, Total | H | 217 | <200 | mg/dL |
| Triglycerides | | 73 | 10-150 | mg/dL |
| HDL Cholesterol | H | 70 | 40-60 | mg/dL |
| LDL-Cholesterol | H | 132 | 0-130 | mg/dL |
| Chol/HDLC Ratio | | 3.1 | 0.0-4.0 | |

## SPECIAL CHEMISTRY

| | | | |
|---|---|---|---|
| PSA, Total | 1.140 | 0.064-4.000 | ng/mL |

## HEMATOLOGY

| | | | | |
|---|---|---|---|---|
| White Blood Cell Count | | 8.4 | 4.3-11.1 | K/uL |
| RBC | | 5.37 | 4.46-5.78 | M/uL |
| Hemoglobin | | 15.3 | 13.6-17.6 | g/dL |
| Hematocrit | | 49.1 | 40.2-51.4 | % |
| MCV | | 91.4 | 82.5-96.5 | fL |
| MCH | | 28.5 | 27.1-34.9 | pg |
| MCHC | L | 31.2 | 33.0-37.0 | g/dL |
| RDW-CV | | 13.3 | 12.0-14.0 | % |
| Platelet Count | H | 469 | 130-374 | K/uL |
| MPV | H | 10.8 | 6.9-10.5 | fL |

| | |
|---|---|
| **FLAG LEGEND** | L=Low  L!=Low Critical  H=High  H!=High Critical  A=Abnormal  A!=Abnormal Critical |

 **Federal Bureau of Prisons**

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

*** Sensitive But Unclassified ***

| | | |
|---|---|---|
| **Name** RUSSO, ANTHONY | **Facility**   USP Allenwood | **Collected** 03/15/2021 10:02 |
| **Reg #** 42252-053 | **Order Unit** A02-221L | **Received** 03/16/2021 11:18 |
| **DOB** 02/24/1953 | **Provider** Amber  Pedro, PA-C | **Reported** 03/16/2021 12:55 |
| **Sex** M | | **LIS ID**     108201142 |

| HEMOGLOBIN A1C | | | | |
|---|---|---|---|---|
| Hemoglobin A1C | H | 6.0 | <5.7 | % |
| 5.7 - 6.4 Increased Risk<br>> 6.4 Diabetes | | | | |

---

**FLAG LEGEND**     L=Low   L!=Low Critical    H=High    H!=High Critical    A=Abnormal   A! =Abnormal Critical

Page 1 of 1

Exhibit H

## INFORMATION FOR THE INMATE  POPULATION
## (Effective: Wednesday, January 19, 2022)

SUBJECT: Modified Operations for units 2 and 4

As a result of multiple positive COVID tests, units 2 and 4 have been secured to mitigate the possible spread of the virus to staff and other inmates within the unit.  However, we continue to receive positive tests, even with these modified operations.  Based on the need to mitigate the spread of the virus, while also allowing inmates the opportunity to revalidate their MP3s, contact their family, etc, the out-of-cell procedures will be modified effective Wednesday, January 19, 2022:

- Inmates within their specific cohort group will be permitted showers **Monday, Wednesday, and Friday** for 45 minutes.
- During this 45 minute shower time, inmates may also utilize the phones and e-mails.
- When outside of the cell, on the phone, or on the computers, mask usage is REQUIRED.  Inmates who fail to comply with this will be returned to their cell.
- Inmates visiting with other inmates at the cell door is not permitted. You can potentially transmit the virus through this very simple contact, thus prolonging the quarantine period.
- An orderly will be assigned to wipe down the phones, keyboards, and showers after each use.
- Each meal will be delivered to the cells until the unit is clear of the quarantine.
- The unit will shop commissary on its assigned day, but will be limited to $50 weekly.
- Laundry/linen exchange will also take place on its assigned day.


Now, more than ever, is the time to remind you of the importance of proper hygiene and continued mask usage.  The Omicron variant has shown to spread much more easily, however, those whom are vaccinated are showing much milder symptoms.  Accordingly, the CDC continues to recommend these mitigation efforts for prisons and group homes.  Mask usage remains mandatory.

My staff and I will make regular rounds throughout the unit to address individual concerns.

We will update you with new information as it becomes available.


J. L. Jamison
Warden

Date 1/18/2022

Exhibit I



Subscribe

Advertisement

News

# Allenwood penitentiary has more inmate COVID-19 cases than any other BOP facility

Published: Dec. 27, 2021, 4:42 p.m.

146
shares

By **John Beauge | Special to PennLive**

ALLENWOOD — The federal penitentiary at the Allenwood Correctional Complex has 143 inmates who have tested positive for COVID-19, more than any other facility operated by the U.S. Bureau of Prisons.

The medium-security prison at the Allenwood complex ranks fourth in the federal prison system, with 29 inmates who have tested positive.

In between the two Allenwood facilities is the prison camp at Alderson, W.Va., with 111 cases and the Metropolitan Correctional Center in Chicago with 50.

Advertisement

Visits with inmates have been suspended at the Allenwood penitentiary and the Alderson camp. Visitation rules have been modified at the other two facilities.

There have been two COVID-19-related deaths at the three-prison Allenwood complex – one at the penitentiary and the other at the low-security prison, which currently has no reported cases of COVID-19.

Penitentiary inmate John Lewis died Dec. 9, 2020, and low-security inmate Michael Hadam passed away Oct. 15.

It has not yet been determined whether the Oct. 21 death of Tori Smith at the medium-security prison and Jan. 29 passing of Gregory J. Ziglar at the nearby Lewisburg Federal Penitentiary were related to COVID-19, a Bureau of Prisons spokesperson said. President Biden on Sept. 9 signed an executive order mandating vaccinations for all Justice Department employees. Those granted religious or medical exemptions are required to be tested.

Only one staff member at the Allenwood penitentiary is on the list of positive cases.

"The BOP regularly tests for COVID-19 but does not routinely test for the actual strain or variant as it does not affect how we manage the pandemic, nor does it affect the individual management of the inmate," a spokesman said.

"Consistent with CDC guidance, all inmates who test positive for COVID-19 are treated equally regardless of variant. "

All BOP facilities have areas reserved to quarantine inmates who test positive, he said. Without disclosing specifics about the Allenwood complex, he said inmates are transferred to hospitals as medical conditions warrant.

Note to readers: if you purchase something through one of our affiliate links we may earn a commission.

# Around the Web

Exhibit J

**Table 15**

**SENTENCE IMPOSED BY TYPE OF CRIME[1]**

**Fiscal Year 2021**

| TYPE OF CRIME | SENTENCE LENGTH[2] | | | LENGTH OF IMPRISONMENT[3] | | |
|---|---|---|---|---|---|---|
| | Mean Months | Median Months | N | Mean Months | Median Months | N |
| **TOTAL** | **48** | **24** | **57,286** | **52** | **29** | **52,300** |
| **Administration of Justice** | 13 | 8 | 512 | 17 | 12 | 369 |
| **Antitrust** | 3 | 3 | 6 | -- | -- | 1 |
| **Arson** | 63 | 48 | 79 | 64 | 48 | 77 |
| **Assault** | 57 | 36 | 668 | 63 | 39 | 601 |
| **Bribery/Corruption** | 20 | 12 | 247 | 26 | 18 | 179 |
| **Burglary/Trespass** | 23 | 14 | 64 | 25 | 18 | 57 |
| **Child Pornography** | 108 | 90 | 1,215 | 109 | 92 | 1,199 |
| **Commercialized Vice** | 14 | 11 | 114 | 23 | 18 | 65 |
| **Drug Possession** | 1 | 0 | 309 | 3 | 0 | 111 |
| **Drug Trafficking** | 74 | 60 | 17,608 | 76 | 60 | 16,990 |
| **Environmental** | 2 | 0 | 173 | 5 | 2 | 40 |
| **Extortion/Racketeering** | 25 | 15 | 116 | 32 | 24 | 88 |
| **Firearms** | 48 | 37 | 8,150 | 51 | 40 | 7,675 |
| **Food and Drug** | 9 | 1 | 47 | 20 | 14 | 20 |
| **Forgery/Counter/Copyright** | 16 | 12 | 137 | 19 | 15 | 107 |
| **Fraud/Theft/Embezzlement** | 20 | 12 | 4,571 | 28 | 18 | 3,202 |
| **Immigration** | 13 | 8 | 16,937 | 13 | 9 | 16,164 |
| **Individual Rights** | 32 | 3 | 69 | 72 | 46 | 30 |
| **Kidnapping** | 166 | 123 | 92 | 168 | 124 | 91 |
| **Manslaughter** | 69 | 59 | 56 | 70 | 60 | 55 |
| **Money Laundering** | 57 | 30 | 1,028 | 64 | 37 | 908 |
| **Murder** | 244 | 231 | 257 | 245 | 233 | 256 |
| **National Defense** | 37 | 26 | 217 | 42 | 30 | 189 |
| **Obscenity/Other Sex Offenses** | 22 | 18 | 298 | 23 | 19 | 288 |
| **Prison Offenses** | 11 | 8 | 532 | 11 | 8 | 513 |
| **Robbery** | 104 | 90 | 1,300 | 106 | 93 | 1,275 |
| **Sexual Abuse** | 211 | 180 | 1,062 | 212 | 180 | 1,057 |
| **Stalking/Harassing** | 26 | 18 | 219 | 29 | 21 | 194 |
| **Tax** | 14 | 12 | 421 | 20 | 15 | 271 |
| **Other** | 2 | 0 | 782 | 5 | 1 | 228 |

[1] Of the 57,287 cases, one was excluded due to missing or indeterminable sentencing information. Sentences of 470 months or greater (including life) were included in the sentence average computations as 470 months. Descriptions of variables used in this table are provided in Appendix A.

[2] Sentences of probation only are included here as zero months of imprisonment. In addition, the information presented in this column includes conditions of confinement as described in USSG §5C1.1.

[3] Length of imprisonment does not include probation or any conditions of confinement as described in USSG §5C1.1.

SOURCE: U.S. Sentencing Commission, 2021 Datafile, USSCFY21.

Exhibit K

April 22nd , 2022

The Honorable Frederic Block
United Stares District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Block,

   My name is Concetta Russo and I am writing to you on behalf of my
husband Anthony Russo.  Anthony has been incarcerated since April
8, 1993.  I have known Anthony since grade school.  We have been
married for nearly 47 years - though the last 30 have been very
painful ones for me, to say the least.

   I am praying that you will find it in your heart to consider my
husband's request for a sentence reduction.  He's been imprisoned
and away from us all for the past near 30 years. He's missed so many
important occasions and stepping stones in our children's lives and
all of the important occasions and stepping stones in his six (6)
grandchildren's lives.  He has always tried to be a positive influence
and presence in our lives while he's been away from us - though the
last few years have been particularly difficult because of the ongoing
pandemic.  Unfortunately, we've been prohibited from visiting with
him for extremely long stretches of time - well over a year at one
point - and this has been especially difficult for him - not seeing us -
and being virtually locked down in his cell. I know that my husband
has been a model inmate and that he has tried to improve himself
while away from us.  He is now near 70 years old and not in good
health.  God forbid he is ever infected with COVID-19.  I worry for my
husband everyday.  He has paid a very substantial debt to society
and deserves to finally be reunited and home with his family.
Hopefully, as soon as is possible.

   If Your Honor orders my husband's release - he will be living with
me in the same home we had 30 years ago.  Fortunately, we inherited

another home which we rent that generates enough income for us to live comfortably in the twilight years of our lives.

Please allow my husband to come home to us!

Sincerely,

*Concetta Russo*

April 20th, 2022

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Block,

My name is Sebastian Russo and I am writing this letter on behalf of my father Anthony Russo, an inmate presently in the Allenwood federal prison system. I am the eldest of his three (3) children - all boys. My father has been incarcerated since April 1993 - for near 30 years now - and was sentenced to a mandatory term of life imprisonment under the then-mandatory United States Sentencing Guidelines.

I was just 16 years old, and my brothers 13 and 10 years old, when my father was arrested in the case. Growing up without a father was tough, especially for me being the oldest and trying to fill his shoes for my younger brothers. In reality, it was really our mother filling those shoes and doing the best she could to raise three boys in Brooklyn, alone. We are all grown men now with our own families who our father adores, including 6 grandchildren who also think the world of him and only know him from phone conversations and a prison visiting room. He makes everyone of them think that they are his favorite. My father is a good person who is always trying to help people, even when he cannot help himself. He has been a model inmate and well liked by staff and inmates alike. He is a man with strong family values who has paid his debt to society and missed so much of all our lives. He is near 70 years old now and not in great health - even needing a walker now to get around.

Please consider our pleas to bring our father, grandfather and my mother's husband finally back to us - after near 30 very long years.

Sincerely ,

April 19th, 2022

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Honorable Judge Block,

   I am writing in support of Anthony Russo's request for a sentence reduction. His release would be more than fair under the circumstances. He has been incarcerated for more than 29 years now and at nearly 70 years of age, has certainly paid dearly for his crime. I am Marilena Russo, married to Anthony's oldest son, Sebastian. I met my father-in-law in 1995 while dating his son. I would describe him as a human being who is compassionate, faithful, respectful, logical, fair and a loving caring person; one who believes in principles, family values, and traditions and who cares and wants the best interest for everyone. He has shown me in the last 26 years or so to always help others before we help ourselves because of the selfless person that he is. In the last 26 years, I have watched my father-in-law's three children grow to be men with strong family values and principles that we all live by every day. All hard working, respectable individuals building families. It has been extremely hard for my mother-in-law to raise three boys on her own, but at nearly 70 years old, she remains loyal to and longs to be reunited with her husband of 47 years. Today, my father-in-law's sons have six (6) children between

children between them - all of which he has missed each precious milestone for. He adores each one of them as they do him from afar. My father-in-law always continues to be strong for his family, even with all of his struggles of late - with the craziness of the pandemic. While imprisoned, my father-in-law lost a dear brother as well as his mother - and he was - of course - unable to say goodbye to either - something he has never gotten over.

My father-in-law has an entire family praying for his return home with us. He does not deserve to die in prison. He has been a model prison and tried to improve himself while away from us all. We are waiting, supportively to help him begin a new life full of love and immediate family. At nearly 70 years of age, he poses no danger to society. He would only benefit us all in his old age with his amazing qualities and love. At this time, this is our families last prayer; to be reunited with our father, grandfather, husband, and friend.

Sincerely,

Marilena Russo

April 19th 2022

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Dear Honorable Judge Block,

   My name is Sabrina Russo and I am one of Anthony Russo's granddaughter's.  My grandfather is an extremely loving and caring grandparent.  While we have not been permitted to visit my grandfather for quite some time - I was always excited to have a face-to-face conversation with him and tell him about everything occurring in my life.  My grandfather is so happy to hear about everything that is going on because he is so invested in my life as well as the lives of rest of his grandchildren. It is sad to me that our conversations are timed and always come to an end.

   My grandfather has missed out on major milestones in my life such as my baptism, holy communion, passing my road test and soon to be high school graduation. The list goes on and on.  I long to have a normal relationship with my grandfather beyond a prison wall. My grandfather has missed out on countless occasions with his children as well as his grandchildren. I pray each night that he comes home and one day can watch me raise kids of my own. My grandfather has served an enormous amount of time behind bars. I wish he would come home and watch his grandchildren grow up and be with the rest of his family.

           Thank You

           *Sabrina Russo*

   Sabrina Russo

The Honorable Frederic Block
United Stares District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Block,

My name is Gianna Russo. I am Anthony Russo's granddaughter. I think of my Pop as a loving, caring figure. Some memories I have with my grandfather include receiving drawings from him, as a kid. I would be so excited waiting for the next one he would send. Each phone call that my grandfather makes home he makes me feel so special. When we were able to visit with my grandfather before the pandemic, I was always thrilled to hug him and talk to him about what is going on in my life, however, going to visit him in a prison environment always makes me very sad and upset. My relationship with my grandfather is very strong, but only consists of sitting at a table where I am times to talk to him or phone calls once a week. My biggest wish in life is to be with him outside of a prison setting. I recently graduated high school and started college. I wish my grandfather was home with me to be by my side during these major milestones in my life. I hope he will be home with us one day to watch me get married. My grandfather has served enough time in prison- close to half of his 70 years. We all miss him so dearly.

Please return him home to us Your Honor.

Thank You.

Sincerely,

Gianna Russo

# Alfonse Russo

441 Carroll Street
Brooklyn, NY 11215

April 17th, 2022

The Honorable Frederick Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn. NY 11201

Dear Judge Block,

   My name is Alfonse Russo. I'm writing to Your Honor on behalf of my Dad, Anthony Russo, who has been incarcerated since 1993.
I was 13 years old at the time that he went to prison.  Growing up without our father was not easy for myself and two brothers, and most of all my Mother.  Over the course of the past 30 years my father has missed so many milestones in our lives - birthdays, holidays, weddings, childbirths, family functions, loss of loved ones - the list goes on and on.  My father knows that he is to blame for this.  He is very sorry, and while imprisoned I know that he has been a model inmate and done everything that he can to show he has rehabilitated himself.

   We all miss him terribly.  My father was convicted in 1994. He was granted a new trial by his trial Judge in 1997, due to prosecutorial misconduct - the withholding of evidence - only for that ruling to be reversed 2-1 by the 2nd Circuit Court of Appeals.

   I am asking Your Honor to please consider my father's plea for a sentence reduction. He has been away from us and served more than 29 years in prison. He has paid a very substantial debt to society for his conduct.  He is nearly 70 years old.  My brothers and I are now 44, 42 and 39 years old. We are married and have children of our own. My brothers and I grew up without a father around. Our children, his grandchildren - have never seen him outside of a prison setting. The last few years, during the ongoing pandemic, have been especially hard on us all - especially my father.  We were prohibited from seeing him altogether during the early stages of the pandemic for over an entire year - and the visiting when permitted is limited in the number of individuals

allowed and no-contact whatsoever is permitted.  The facility where my father was housed, until very recently, had more inmates with COVID-19 than any other facility in the entire nation. While we have all had each other during the pandemic , my father is alone and many miles away behind barbed wire fences and has now been on virtual lockdown in his cell for years on end now.

I've admittedly read some of the books written by Your Honor. You speak of collateral damage and taking that into consideration during the sentencing phase of a defendant's case. My Mom and I, along with my siblings know about collateral damage first-hand, as it has affected us dearly. I applaud you for acknowledging the innocents not involved, but clearly affected by the process.

My father is near 70 years old now.  His health is not good.  In fact, the last time we were able to see him - he needed a walker to assist him getting around.  He has been a very positive presence in our lives from afar. We are all gainfully employed, hard-working middle aged men.  We all pray that the time has come for our father to rejoin us.  He does not deserve a life sentence and to die in prison.

Please find it in your heart to return my father home to us as soon as possible.

Thank you.

Sincerely ,

Alfonse Russo

# Kristi Russo

441 Carroll Street
Brooklyn, NY 11215

April 16th, 2022

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Block,

I write to Your Honor on behalf of my father-in-law Anthony Russo.  I have been married to his second son, Alfonse, for 14 years.
My father-in-law was not there for our wedding and I have never seen my father-in-law outside of a prison setting, nor have our children.  I will never forget the first time I spoke to my father-in-law (or Dad as I endearingly refer to him) and the impression in which he left on me. He was determined to ensure that his three sons would grow up to be honest and respectable men. A family man from afar, I was puzzled... how would he conquer such a feat? He made sure his family felt his positive presence no matter what the distance was between them.

Over the years our family has worked tirelessly to achieve the "American Dream" and raise our children to be upstanding citizens, all the while with an integral piece of that dream missing - my father-in-law. Instead, when we were permitted - we'd travel with our babies in tow to visit with him in prison visiting rooms in an attempt to relive and relay our life experiences to him to provide him with a glimpse of his grandchildren's milestones and nuances that every grandparent lives and breathes for.

My father-in-law is nearing 70 years of age and not in good health.  Please hear our pleas for compassion and return my father-in-law to us where he belongs, with doting grandchildren on his knee and his loved ones surrounding him.  He has spent enough time away from us all.

May God bless you.

Warmly,

Kristi Russo

April 18 2022

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Block,

  My name is Joseph Russo. I'm writing to you on behalf of my
father, Anthony Russo, who is now near 70 years old and been
in has been in prison for more than 29 years.  I am his youngest
child. I was 10 years old when my father went to prison. I barely
remember much of him being home. My mother basically
became a single parent raising three young boys without their
father being present. It was hard on my mother, but she did the
best she could and did a good job at it.  Me and my brothers
grew up only seeing our father within the confines of a prison
visiting room. My father has always done the best he could to
be there for us and remain a presence - albeit from a very far
distance.  We all love him and miss him dearly. Growing up
without our father was as difficult as one could imagine. It
continues to be hard everyday on us all.  But, most of all for our
father, who deeply regrets his involvement.  His (and our) only
hope for freedom is a plea for mercy and understanding to you
Your Honor.

  My father has been a model prisoner all of these years and
hopefully worthy of consideration and compassion.  He will be
70 years old soon.  It would be a God-send for our entire family
to have my father home with us - but most of all to my mother -
who has been alone and loyal to him for the past 29 years.

  Sincerely

  Joseph Russo











